UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARISA E.,

                                        Plaintiff,

             v.                                        5:22-cv-01368-DNH-TWD

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                                     OF COUNSEL:


LAW OFFICES OF KENNETH HILLER, PLLC              JUSTIN M. GOLDSTEIN, ESQ.
*Counsel for Plaintiff*                          KENNETH R. HILLER, ESQ.
6000 North Bailey Avenue - Suite 1A
Amherst, NY 14226


SOCIAL SECURITY ADMINISTRATION                   VERNON NORWOOD, ESQ.
*Counsel for Defendant*
6401 Security Boulevard
Baltimore, MD 21235

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### REPORT-RECOMMENDATION AND ORDER

Marisa E. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial

review of a final decision of the Commissioner of Social Security ("Defendant" or

Commissioner") denying her application for disability insurance benefits ("DIB") and

Supplemental Security Income ("SSI"). (Dkt. No. 1.) Plaintiff did not consent to the jurisdiction

of a Magistrate Judge. (Dkt. No. 10.) The matter was referred to the undersigned for the

issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3.

Both parties filed briefs, which the Court treats as cross-motions for judgment on the pleadings

under Federal Rule of Civil Procedure Rule 12(c) in accordance with General Order 18. (Dkt.

Nos. 17, 20.)  Plaintiff filed a reply brief.  (Dkt. No. 21.)  For the reasons discussed below, the

Court recommends that the Commissioner's decision denying Plaintiff Social Security benefits

be affirmed, and that Plaintiff's complaint be dismissed.

## I.    BACKGROUND

Plaintiff was born in 1968 and is a high school graduate.  (Administrative Transcript at

281, 388, 1041.[1])  She had previously worked in customer service from April 2016 to January

2019 and as a patient customer representative from October 2014 to August 2015.  (T. 76, 309.)

On October 7, 2019, Plaintiff filed an application for DIB alleging disability beginning February

1, 2019, and on December 9, 2019, Plaintiff filed for SSI benefits again alleging disability

beginning February 1, 2019.  (T. 10, 272, 274, 281.)  Plaintiff's applications were denied on July

22, 2020, and again upon reconsideration on January 25, 2021.  (T. 148-55, 160-70.)  Thereafter,

she filed a written request for a hearing, and a telephonic hearing was held on August 3, 2021,

before Administrative Law Judge ("ALJ") Bruce S. Fein.  (T. 37-59.)  Plaintiff and a vocational

expert ("VE") testified at the hearing.  *Id.*  On September 2, 2021, the ALJ issued a written

decision finding Plaintiff was not disabled under the Social Security Act.  (T. 10-22.)  On

October 20, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's

decision the final decision of the Commissioner.  (T. 1-9.)  Plaintiff commenced this action on

December 19, 2022.  (Dkt. No. 1.)

## II.    RELEVANT LEGAL STANDARDS

### A.    Standard for Benefits

---

[1]  The Administrative Transcript is found at Dkt. No. 16.  Citations to the Administrative
Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein
will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system.
Citations not made to the Administrative Transcript will use the page numbers assigned by the
Court's CM/ECF electronic filing system.

In reviewing a final decision of the Commissioner, courts must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision. *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)); *see also Brennan v. Colvin*, No. 13-CV-6338 (AJN) (RLE), 2015 WL 1402204, at *10 (S.D.N.Y. Mar. 25, 2015).[2] "Failure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004). Accordingly, the reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

If the ALJ applied the correct legal standards, the reviewing court must determine whether the ALJ's decision is supported by substantial evidence. *Tejada*, 167 F.3d at 773; *Bowen*, 817 F.2d at 985. "Substantial evidence means more than a mere scintilla." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the ALJ's finding as to any fact is supported by substantial evidence, it is conclusive. 42 U.S.C. § 405(g); *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995).

When inadequacies in the ALJ's decision frustrate meaningful review of the substantial evidence inquiry, remand may be appropriate. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996). Remand may accordingly be appropriate where the ALJ has failed to develop the record, *Klemens v. Berryhill*, 703 F. App'x 35, 38 (2d Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999), adequately appraise the weight or

---

[2] "Since the standards for determination of disability and for judicial review in cases under 42 U.S.C. § 423 and 42 U.S.C. § 1382c(a)(3) are identical, decisions under these sections are cited interchangeably." *Donato v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983). Moreover, "[t]he regulations that govern the two programs are, for today's purposes, equivalent." *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019). Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted. *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

persuasive value of witness testimony, *Estrella*, 925 F.3d at 98; *Burgess v. Astrue*, 537 F.3d 117, 130 (2d Cir. 2008), or explain his reasoning, *Klemens*, 703 F. App'x at 36-38; *Pratts*, 94 F.3d at 39.

### B.    Determination of Disability[3]

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Under the five-step sequential evaluation process, the ALJ determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

### III.    THE ALJ'S DECISION

In his September 2, 2021, decision, the ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims.  (T. 10-22.)  First, he found Plaintiff met the insured status requirements of the Social Security Act through June 30, 2024,

---

[3]  **The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).**

4

and had not engaged in substantial gainful activity since the alleged onset date of February 1, 2019.  (T. 12.)  The ALJ next determined Plaintiff has the following severe impairments: bipolar disorder and schizoaffective disorder.  *Id.*  He then determined Plaintiff does not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (T. 13-16.)

The ALJ concluded Plaintiff has the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels, but with the following nonexertional limitations: work limited to simple, routine, and repetitive tasks; work with no production-rate or pace work; occasional interaction with co-workers, supervisors, and the public; and work in a low-stress job, defined as only occasional decision-making, changes in work setting, judgment required on the job.

(T. 16.)  Relying on VE testimony, he found Plaintiff is unable to perform her past relevant work.  (T. 20.)  Based upon her age, education, work experience, and RFC, the ALJ determined Plaintiff was capable of performing other jobs existing in significant numbers in the national economy.  (T. 20-21.)  Thus, the ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from February 1, 2019, through September 2, 2021, the date of the decision.  (T. 22.)

## IV.    DISCUSSION

Plaintiff contends while the ALJ found the opinions of Drs. Ferrin and Fernandez to be persuasive, their opinions were "significantly more limited concerning Plaintiff's ability to interact with others" than the ALJ's ultimate RFC assessment.  (Dkt. No. 17 at 6.)  Because the ALJ "failed to reconcile this conflict in any way," the ALJ's RFC determination was not supported by substantial evidence.  *Id.* at 6-9.  At the same time, Plaintiff contends the ALJ erred

in relying on the "vague" opinions of Drs. Ferrin and Fernandez invalidating the ALJ's determination. *Id.* at 9-12.

Defendant asserts Plaintiff's contentions are meritless; substantial evidence supports the ALJ's RFC determination; and the ALJ properly evaluated the assessments of Dr. Ferrin and Dr. Fernandez. (Dkt. No. 20 at 6-12.) For the reasons set forth below, the Court agrees with Defendant.

## A.    Substantial Evidence Supports the ALJ's RFC Determination

### 1. Legal Standards

#### a.  Residual Functional Capacity

A claimant's RFC is the most he or she can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Id*. (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

**b. Evaluation of Opinion Evidence**

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[4] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" forming the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his

---

[4] Plaintiff's applications were dated October 7, 2019, and December 9, 2019. (T. 274, 281.) Thus, the new regulations apply in her case.

or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1).  The regulations provide with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).  However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### c. Evaluation of Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take into account the plaintiff's reports of pain and other symptoms. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  "The ALJ must 'carefully consider' all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

8

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term.  SSR 16-3p, 81 FR at 14167.  Instead, symptom evaluation tracks the language of the regulations.[5]  The evaluation of symptoms involves a two-step process.  First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'"  *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing *inter alia* 20 C.F.R. § 404.1529(a); *Genier,* 606 F.3d at 49) (alterations in original).

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence.  *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superseded SSR 96-7p).  The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning

---

[5]  The standard for evaluating subjective symptoms has not changed in the regulations.  Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear that the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character."  SSR 16-3p, 81 FR at 14167.  The Court will remain consistent with the terms as used by the Commissioner.

claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

### 2.    Application

As stated above, the ALJ determined Plaintiff has the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: work limited to simple, routine, and repetitive tasks; work with no production-rate or pace work; occasional interaction with co-workers, supervisors, and the public; and work in a low-stress job, defined as only occasional decision-making, changes in work setting, judgment required on the job.  (T. 16.)

In evaluating potential limitations imposed by Plaintiff's mental impairments, the ALJ considered the opinions of State Agency review psychologists, H. Ferrin, PhD, and P. Fernandez, PhD; consultative psychiatric examiner Jeanne Shapiro, PhD; and Elizabeth M. Wade, LCSW-R ("LCSW Wade").

On July 15, 2020, Dr. Ferrin reviewed the record and determined Plaintiff had mild limitations understanding, remembering, and applying information and had moderate limitations interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself.  (T. 83.)  Dr. Ferrin found Plaintiff appeared to be capable of understanding and remembering detailed work instructions and procedures.  *Id.* at 87.  Although Plaintiff might have lapses in focus, motivation, and reliability, she appeared to sustain sufficient capacity for attention/concentration to complete work-like procedures or sustain a routine.  *Id.* at 87-88.  Plaintiff's ability to deal with co-workers and the public would be somewhat reduced, but adequate to handle brief and superficial contact.  *Id.* at 88.  Similarly, Plaintiff's ability to tolerate and respond appropriately to supervision would be reduced, but adequate to handle

ordinary levels of supervision in the customary work setting. *Id.* Finally, while Plaintiff had some difficulty coping in stressful circumstances in her personal life, she otherwise appeared to be capable of adapting to customary changes in an ordinary work environment. *Id.* Dr. Ferrin concluded Plaintiff was not disabled. *Id.* at 89. Dr. Fernandez reviewed the record on January 22, 2021, and came to the same conclusions as Dr. Ferrin. *See id.* at 101, 107-08, 110.

The opinions of Dr. Ferrin and Dr. Fernandez are supported by their reviews of the record. At her mental status exam on May 23, 2019, at the hospital, Plaintiff made good eye contact and was cooperative; her behavior was appropriate and calm; and her speech was fluent and exhibited normal rate, rhythm, and volume. (T. 392, 394.) Plaintiff was found to be oriented to time, place, and person; her memory was intact with immediate recall; her intellectual functioning was intact and her thought process was organized. *Id.* at 392. She was cleared for discharge. *Id.* at 394.

On October 11, 2019, Plaintiff reported she had been feeling "less agitated" than the week before. (T. 488.) The provider also noted Plaintiff appeared to be less agitated than the last session as evidenced by a decrease in leg shaking/restlessness and an increase in eye contact. (T. 487.)

On January 30, 2020, Plaintiff was seen for a psychiatric evaluation after expressing suicidal ideation. (T. 493.) Plaintiff was cooperative; her remote and recent memory were intact; her insight, judgment, and fund of knowledge were good; and she was appropriately oriented in all spheres. *Id.* at 493, 498. Her thought process was linear and logical and her thought content was within normal limits. *Id.* Plaintiff's concentration and attention span were good and her cognition was intact. *Id.* at 498. Plaintiff reported feeling better and safe for discharge. *Id.* at 499. The provider noted Plaintiff did not appear to be an imminent danger to

herself or others based on her self-report.  *Id.*  Moreover, the objective findings on her mental status evaluation and her overall history did "not contradict her self-report."  *Id.*

On June 9, 2020, Plaintiff was seen for a psychiatric evaluation.  (T. 541.)  Plaintiff's thought process was concrete; her recent and remote memory were intact; and she was appropriately oriented.  *Id.* at 546-47.  The next day, June 10, 2020, Plaintiff's affect was "bright" and she denied suicidal thoughts or feelings of self-harm.  *Id.* at 549.  She was again properly oriented; her thought process was linear and logical; her thought content was within normal limits; her remote and recent memory were intact; her insight, judgment, and fund of knowledge were fair; her attention span was fair; and her cognition was intact.  *Id.* at 553-54.  Dr. Ferrin's and Dr. Fernandez's opinions are also supported by Dr. Shapiro's July 6, 2020, consultative exam as discussed in more detail below.

The ALJ found Dr. Ferrin's and Dr. Fernandez's mental RFC assessments to be persuasive "in light of their Agency knowledge and review of the medical record."  *Id.* at 18.  The ALJ noted the opinions of Dr. Ferrin and Dr. Fernandez were based upon a review of "all relevant medical evidence and opinions in the claim at the time they rendered their opinions including the consultative psychiatric evaluation of [Plaintiff] that was performed by Dr. Shapiro" and were supported by the findings set forth in their reports.  *Id.* at 19.  The ALJ also found Dr. Ferrin's and Dr. Fernandez's "familiarity with the policies and evidentiary requirements of the SSA's disability program, as well as the fact that the purpose of their review was to render a medical opinion on disability using the SSA's disability evaluation criteria" added to the persuasiveness of their opinions.  *Id.*

The courts have long recognized an ALJ has discretion to rely on a non-examining medical consultant's opinion.  *See Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010)

("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."); *see Leach v. Barnhart*, No. 02-CV-3561, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."). Here, the ALJ properly relied on and took "into account the opinions of Dr. Ferrin and Dr. Fernandez by limiting the claimant to a low-contact and low-stress work environment." (T. 19.)

During the July 6, 2020, consultative examination with Dr. Shapiro, Plaintiff's chief complaints were difficulty falling asleep; loss of appetite, but not loss of weight; depression; anxiety; dysphoric moods; fatigue; loss of energy; lack of motivation; and lethargy. (T. 563.) She further reported experiencing manic episodes characterized by inflated self-esteem; pressured speech; excessive money spending; depressed need for sleep; flight of ideas; and elevated and expansive mood. *Id.* Plaintiff also described experiencing anger which caused her to curse, yell, and throw things. *Id.* She also reported she started projects but did not finish them and she found it difficult to stay focused. *Id.*

At her exam, Plaintiff was casually and appropriately dressed. *Id.* at 564. She stated she felt "not bad" and "was basically concerned about her ride." *Id.* Her posture and motor behavior were normal and her eye contact was appropriately focused. *Id.* Plaintiff's demeanor and responsiveness to questions were cooperative and her manner of relating, social skills, and overall presentation were adequate. *Id.* Plaintiff's speech was intelligible and fluent. *Id.* Her affect was of full range and appropriate to speech and thought content. *Id.* Plaintiff's thought processes were coherent and goal directed with no evidence of hallucinations, delusions, or

paranoia in the evaluation setting. *Id.* She was oriented to person, place, and time, and her attention and concentration skills were grossly intact. *Id.* She was able to count and make simple calculations such as 8x4 and serial 7s from 100. *Id.* Plaintiff's recent and remote memory skills were grossly intact. *Id.* She was able to recall 3 out of 3 objects immediately and after a delay and could accurately recall 7 digits forward and 5 digits backward. *Id.* at 564-65. Plaintiff "appeared to be functioning in the low average range of intelligence" and her general fund of information was "appropriate to her experience." *Id.* at 565.

Plaintiff reported to Dr. Shapiro she could dress, bathe, and groom herself. *Id.* She did her own cooking, cleaning, and laundry. *Id.* Plaintiff could also manage her own money and take public transportation. *Id.* While Plaintiff stated she did not have friends, she reported having a good relationship with her family. *Id.* She told Dr. Shapiro she enjoys cooking and arts and crafts. *Id.* She spends her days doing housework; organizing her home; cooking; doing arts and crafts; watching TV; listening to music; getting together and talking with her family; and spending time with her son. *Id.*

Based on her examination, Dr. Shapiro concluded Plaintiff had no limitations understanding, remembering, or applying simple or complex directions and instructions; using reason and judgment to make work-related decisions; sustaining an ordinary routine and regular attendance at work; maintaining personal hygiene and appropriate attire; or in her awareness of normal hazards and her ability to take appropriate precautions. *Id.* at 565-66. She further opined Plaintiff had mild to moderate limitations interacting adequately with supervisors, co-workers, and the public; had mild limitations in her ability to sustain concentration and perform a task at a consistent pace; and had mild to moderate limitations in her ability to regulate emotions, control behavior, and maintain well-being. *Id.* Dr. Shapiro found Plaintiff's difficulties "are caused by

psychiatric problems and substance abuse." *Id.* at 566.  Further, Dr. Shapiro determined the results of the examination appeared to be "consistent with psychiatric and alcohol abuse problems" and this "may significantly interfere with her ability to function on a daily basis." *Id.* at 566.

The ALJ accorded Dr. Shapiro's opinion "less persuasive value."  (T. 19.)  The ALJ found support in the evidence of the record for Dr. Shapiro's medical source statement regarding Plaintiff's limitations, or lack thereof, except the ALJ rejected Dr. Shapiro's determination that Plaintiff's psychiatric and alcohol abuse problems might significantly interfere with her ability to function on a daily basis.  *Id.* at 19, 565-66.  The ALJ found Dr. Shapiro's determination regarding Plaintiff's psychiatric and alcohol abuse to be "primarily based on [Plaintiff's] subjective report of her own functional limitations, rather than on any clinical findings made by Dr. Shapiro[.]" *Id.* at 19.

On July 14, 2021, LCSW Wade sent a letter to Onondaga Department of Social Services.  (T. 1102.)  LCSW Wade noted Plaintiff had made "[n]o progress" and her "persistent mental health issues remain[ed] the same." *Id.*  She determined Plaintiff was "NOT a candidate for work, due to mental health issues." *Id.*

The ALJ found LCSW Wade's opinion to have "little persuasive value" because she failed to "provide a function-by-function analysis to support her disabling assessment of [Plaintiff's] mental ability to perform work-related activities" and her opinion was "inconsistent with all the other opinion evidence of record."  (T. 20.)

Plaintiff argues the ALJ failed to reconcile favorable limitations from the persuasive opinions of the State Agency review physicians and such failure warrants remand.  (Dkt. No. 17 at 6-9.)  This argument is unavailing.  It is the province of the ALJ to resolve genuine conflicts in

the record. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). However, the Commissioner

need not "reconcile explicitly every shred of medical testimony." *Galiotti v. Astrue*, 266 F.

App'x 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)).

Here, the ALJ resolved conflicts in and between the various medical opinions by assigning the

greatest persuasive value to those portions of the medical opinions deemed most consistent with

Plaintiff's overall treatment record and activities. In doing so, the ALJ appropriately evaluated

the conflicting medical evidence, and made an RFC finding consistent with the overall record.

*See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not

perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all

the evidence available to make an RFC finding consistent with the record as a whole).

Accordingly, substantial evidence supports the ALJ's RFC determination.

### B.  The Opinions of Dr. Ferrin and Dr. Fernandez

Plaintiff argues the ALJ erred by relying on Dr. Ferrin's and Dr. Fernandez's "vague"

opinions. (Dkt. No. 17 at 9.) Specifically, Plaintiff takes issue with Dr. Ferrin's and Dr.

Fernandez's assessments that Plaintiff's

> "ability to deal with co-workers and the public would be somewhat
> reduced, but adequate to handle brief and superficial contact.
> Similarly, [Plaintiff's] ability to tolerate and respond appropriately
> to supervision would be reduced, but adequate to handle ordinary
> levels of supervision in the customary work setting. Although
> [Plaintiff] has some difficulty coping in stressful circumstances in
> her personal life, she otherwise appears to be capable of adapting
> to customary changes in an ordinary work environment."

(T. 88, 99.)

The ALJ found the above assessments to be persuasive and limited Plaintiff to a "low-

contact and low-stress work environment," including only "occasional interaction with co-

workers, supervisors, and the public" and "work in a low-stress job, defined as only occasional decision-making, changes in work setting, [and] judgment required on the job."  (T. 16, 18.)

However, Plaintiff argues because the medical opinions do not provide "any real definition" of the terms "ordinary" or "customary," they are "decidedly" vague and as such "the ALJ's reliance on these opinions as the lynch pin of his decision was improper, warranting remand."  (Dkt. No. 17 at 9.)  Moreover, due to the vagueness of the opinions, the ALJ should have "re-contact[ed] the source[s] for clarification."  *Id.*  The Court finds these arguments unpersuasive.

Even if these opinions were vague, substantial evidence in the record supports the limitations set forth in Plaintiff's RFC stating Plaintiff should only work in a low-contact and low-stress work environment with only occasional interaction with co-workers, supervisors, and the public and only occasional decision-making, changes in work setting, and judgment.  (T. 16, 18.)  For example, on July 6, 2020, Plaintiff reported to Dr. Shapiro that she was unable to work due to anxiety.  (T. 562.)  Plaintiff stated she was depressed, experiences dysphoric moods, fatigue, loss of energy, lack of motivation, and lethargy.  *Id.* at 563.  Specifically, she reported being depressed because she was alone and does not feel important to her children and felt anxious about dying alone.  *Id.*  She also reported when she became angry she would curse, yell and throw things.  *Id.*  However, Dr. Shapiro found Plaintiff's demeanor and responsiveness to questions were cooperative and her manner of relating, social skills, and overall presentation were adequate.  *Id.* at 564.  While Plaintiff reported she did not have friends, she described having a good relationship with her family.  *Id.* at 565.  Dr. Shapiro ultimately found Plaintiff had mild to moderate limitations interacting adequately with supervisors, co-workers, and the public.  *Id.*

On July 15, 2020, Dr. Ferrin reviewed all available medical records and found Plaintiff had moderate limitations interacting with others. (T. 71.) Dr. Ferrin concluded Plaintiff was not significantly limited in asking simple questions or requesting assistance; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; or maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness. *Id.* at 74. Dr. Ferrin also determined Plaintiff was moderately limited in her ability to interact appropriately with the general public; accept instructions; and respond appropriately to criticism from supervisors. *Id.* Dr. Fernandez came to the same conclusions as Dr. Ferrin. (T. 101, 105-06.)

In addition, at her mental status exam on May 23, 2019, Plaintiff made good eye contact; was cooperative; her behavior was appropriate and calm; and her speech was fluent and exhibited normal rate, rhythm, and volume. (T. 392, 394.) Plaintiff was also noted to be cooperative at multiple mental health status and psychiatric exams. *See id.* at 493, 509, 531, 541, 550.

As noted above, Dr. Shapiro found Plaintiff had mild to moderate limitations interacting with others while Drs. Ferrin and Fernandez found moderate limitations in the same area. (T. 71, 101, 565.) However, moderate, or even marked, limitations interacting with others does not necessarily limit or prevent Plaintiff from performing simple work or occasionally interacting with coworkers, supervisors, and the public. *Whipple v. Astrue*, 479 F. App'x 367, 370 (2d Cir. 2012) (concluding that the consultative examiners' findings that the plaintiff's depression and anxiety caused moderate limitations in social functioning ultimately supported the ALJ's determination that the plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment); *Carthron-Kelly v. Comm'r of Soc. Sec.*, No. 5:15-CV-

0242 (GTS/WBC), 2017 WL 9538379, at *7 (N.D.N.Y. Sept. 25, 2017) (RFC assessment

limiting the plaintiff to unskilled work accounted for doctor's opinion that the plaintiff had

moderate limitations in her ability to interact with others); *Fiducia v. Comm'r of Soc. Sec.*, No.

1:13-CV-285, 2015 WL 4078192, at *4 (N.D.N.Y. July 2, 2015) ("The fact that plaintiff was

found to have a marked limitation interacting with others does not conclusively demonstrate that

she is unable to work, particularly given the fact that the ALJ limited plaintiff to work that does

not require more than occasional interaction with the public and co-workers."); *see also Sarah R.*

*v. Kijakazi*, 2022 WL 2704528, at *4 (W.D.N.Y. 2022) (where "plaintiff had moderate

limitations in the functional areas of interacting with others, and adapting and managing herself,

the ALJ included RFC limitations restricting plaintiff to [among other things] simple, routine,

and repetitive tasks"); *Herb v. Comm'r of Social Security*, 366 F. Supp. 3d 441, 447 (W.D.N.Y.

2019) ("an RFC limiting a plaintiff to occasional interaction with co-workers and the public, and

to the performance of simple, routine tasks, may account for the plaintiff's stress-related

limitations"); *Wells v. Comm'r of Soc. Sec.*, 625 F. Supp. 3d 80, 88 (S.D.N.Y. 2022) (finding

ALJ incorporated plaintiff's moderate limitations interacting with others by limiting plaintiff to

only occasional interaction with the public and providing that he could experience few, if any,

changes in workplace setting.)

  Further, there was no reason for the ALJ to recontact Drs. Ferrin and Fernandez because

there was sufficient information upon which the ALJ could formulate an RFC, as described in

more detail above.  *See Morris v. Berryhill*, 721 F. App'x 25, 28 (2d Cir. 2018) ("The duty to

recontact arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's

findings"); *Lowry v. Astrue*, 474 Fed. App'x 801, 804 (2d Cir. 2012) ("where there are no

obvious gaps in the administrative record, and where the ALJ already possesses a complete

medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a claim for benefits") (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999)); *Gilbert H. v. Saul*, No. 5:20-CV-80 (MAD), 2020 WL 6146596, at *5 (N.D.N.Y. Oct. 20, 2020) ("the ALJ did not have a duty to request additional medical records because there was not an obvious gap in the record."); *Sheila W. v. Comm'r of Soc. Sec.*, No. 5:21-CV-211 (ATB), 2022 WL 3908809, at *6 (N.D.N.Y. Aug. 30, 2022) (citation omitted) ("Although the ALJ must attempt to fill in any obvious gaps in the administrative record, 'where the record evidence is sufficient for the ALJ to make a disability determination, the ALJ is not obligated to seek further medical records.'").

Finally, Plaintiff's general argument that the Court should reweigh the evidence is unavailing, as it is not for the Court to reweigh evidence. *See Marie R. v. Comm'r of Soc. Sec.*, No. 6:21-CV-775 (CFH), 2022 WL 2180989, at *13 (N.D.N.Y. June 14, 2022); *see also Cepeda v. Comm'r of Soc. Sec.*, No. 19-CV-4936 (BCM), 2020 WL 6895256, at *8 (S.D.N.Y. Nov. 24, 2020).

## V.    CONCLUSION

Considering the foregoing, the Court finds the ALJ applied the correct legal standards and substantial evidence supports his decision.  Remand is therefore not warranted.

**WHEREFORE**, it is hereby

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 17) be **DENIED**; and it is further

**RECOMMENDED** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 20) be **GRANTED**; and it is further

**RECOMMENDED** that the Commissioner's decision denying Plaintiff benefits be **AFFIRMED**; and it is further

**ORDERED** that the Clerk of the Court serve copies of this Report-Recommendation on the parties in accordance with the Local Rules.  Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: January 12, 2024
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge